# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| **Patrick Nagorski,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **C.A. No. 4:23-CV-2860** |
| | § | |
| **Harris County, Texas,** | § | |
| *Defendant.* | § | |

## DEFENDANT HARRIS COUNTY, TEXAS'
## <u>MOTION FOR SUMMARY JUDGMENT</u>

## <u>TABLE OF CONTENTS</u>

EXHIBIT LIST ................................................................................................ iii

TABLE OF AUTHORITIES .......................................................................... iv

SUMMARY OF THE ARGUMENT ............................................................... vi

I.    STANDARD OF REVIEW ................................................................... 1

II.    STATEMENT OF FACTS ................................................................... 2

   A. Plaintiff's work performance suffers in 2020. .................................. 3

   B. Plaintiff reaches out to Human Resources at his supervisor's advice ........... 4

   C. Plaintiff takes FMLA leave. ........................................................... 5

   D. Plaintiff's supervisors work with him to improve his performance .............. 5

   E. Plaintiff receives a performance evaluation with feedback regarding his poor work performance. ................................................................. 6

   F. Plaintiff files an EEOC Charge and takes additional FMLA leave. ............. 7

   G. Plaintiff voluntarily resigns. ........................................................... 7

III.   ARGUMENTS & AUTHORITIES ...................................................... 8

   A. Plaintiff's disability discrimination claim fails. .............................. 8

   B. Plaintiff's failure-to-accommodate claim fails ............................... 15

   C. Even if the County failed to engage in the interactive process – which it did not – there was no ADA violation because the County granted all requested accommodations. ....................................................................... 16

   D. Plaintiff's FMLA interference claim fails on the basis that his leave requests were fully granted. ....................................................................... 18

   E. Plaintiff's FMLA interference and retaliation claims fail because his performance evaluation does not qualify as an adverse employment action. 18

   F. Plaintiff's FMLA interference and retaliation claims fail because his resignation does not qualify as an adverse employment action. ................. 19

CONCLUSION .............................................................................................. 20

## **EXHIBIT LIST**

Ex. 1: Excerpts from Patrick Nagorski's Deposition

Ex. 2: Declaration from Seth Hopkins

Ex. 3: Excerpts from Seth Hopkins' Deposition

Ex. 4: Written Counseling September 2020 - HC_02849 - 02850

Ex. 5: Performance Issues December 2021 - HC_00837 - 00838; November 2021 - HC_00878 - 00879

Ex. 6: ADA/FMLA emails - HC_00219 - 00225

Ex. 7: ADA Packet and Doctor's Note regarding FMLA and ADA – HC_00717 - 00749

Ex. 8: FMLA approvals - HC_00012, HC_00019 - 00020, and HC_00029 - 00030

Ex. 9: Return to work Documentation - HC_001902 - 001915

Ex. 10: Performance evaluation and response - HC_00208 - 00218

Ex. 11: May 2022 Email Exchange Re Performance review - HC_00871 - 00874 and HC_01390 - 01391

Ex. 12: Excerpts from Natalie DeLuca's Deposition

Ex. 13: EEOC Charge: HC_00603 - 00604

Ex. 14: Resignation: HC_00032 and Exit Interview HC_00204 - 00207

Ex. 15: Excerpts from Stanley Clark's Deposition

Ex. 16: Declaration from Natalie DeLuca

Ex. 17: Excerpts from Pam Rea's Deposition

Ex. 18: Excerpts from Jamie Buchanan's Deposition

Ex. 19: Declaration from Jamie Buchanan

Ex. 20: Declaration from Stanley Clark

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784 (5th Cir. 2017)....................................19

*Amedee v. Shell Chem., L.P.*, 953 F.3d 831 (5th Cir. 2020)....................................15

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986).........................................1, 2

*Brandon v. Sage Corp.*, 808 F.3d 266 (5th Cir. 2015) ..............................................1

*Burch v. City of Nacogdoches*, 174 F.3d 615 (5th Cir. 1999) ..................................9

*Bye v. MGM Resorts Int'l, Inc.*, 49 F.4th 918 (5th Cir. 2022) ................................14

*Cary v. Sandoz, Inc.*, No. 3:23-CV-00080-K, 2023 WL 8461638 (N.D. Tex. Dec. 6, 2023) ................................................................................................. 19, 20

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) .........................................................1

*Cooper v. Dallas Police Ass'n*, 278 Fed. Appx. 318 (5th Cir. 2008) ......................16

*Credeur v. Louisiana Through Office of Attorney Gen.*, 860 F.3d 785 (5th Cir. 2017) ..........................................................................................................9

*Dietelbach v. Ohio Edison Co.*, 1 F. App'x 435 (6th Cir. 2001) ............................10

*Dixon v. Garland*, No. 4:23-CV-00019-P, 2024 WL 150509 (N.D. Tex. Jan. 12, 2024) .............................................................................................................12

*Eason v. Thaler,* 73 F.3d 1322 (5th Cir. 1996)..........................................................2

*Equal Employment Opportunity Comm'n v. Modern Group, Ltd.*, No. 1:21-CV-451, 2024 WL 1288634 (E.D. Tex. Mar. 25, 2024) ..........................................8, 9

*Fleming v. Methodist Healthcare Sys. of San Antonio, Ltd., L.L.P.,* No. SA-21-CV-01234-XR, 2024 WL 1055120 (W.D. Tex. Mar. 11, 2024)................................12

*Foreman v. Babcock & Wilcox Co.,* 117 F.3d 800 (5th Cir. 1997) ..........................8

*Guerra v. Houston Indep. Sch. Dist.*, CIV.A. H-04-0600, 2005 WL 1155140 (S.D. Tex. Apr. 27, 2005).......................................................................................14

*Jeffrey Brown, Plaintiff, v. Valvoline, LLC, & Frank Harris, Defendants.*, No. 4:22-CV-04059, 2024 WL 2946099 (S.D. Tex. June 11, 2024) .........................13

*Jennings v. Towers Watson*, 11 F.4th 335 (5th Cir. 2021) .......................................8

*Johnson v. PRIDE Indus., Inc.*, 7 F.4th 392 (5th Cir. 2021) ..................................13

*Lanier v. Univ. of Tex. Sw. Med. Ctr.*, 527 Fed. Appx. 312 (5th Cir. 2013) ...........18

*Lawrence v. University of Tex. Med. Branch*, 163 F.3d 309 (5th Cir. 1999)...........2

*Lemonia v. Westlake Mgmt. Servs., Inc.*, No. 22-30630, 2023 WL 6878915 (5th Cir. Oct. 18, 2023) ............................................................................................12

*Defendant's Motion for Summary Judgment*                                                    iv

*Molina v. Equistar Chemicals, L.P.*, CIV.A. C-05-327, 2006 WL 1851834 (S.D. Tex. June 30, 2006)...........................................................................14

*Moore v. Excel Contractors, LLC*, No. CV 21-698-JWD-RLB, 2024 WL 2819235 (M.D. La. June 3, 2024)...................................................................12

*Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377 (5th Cir. 1998) ..............1

*National Ass'n of Gov't Employees v. City Pub. Serv. Board,* 40 F.3d 698 (5th Cir. 1994) .................................................................................................1, 2

*Picard v. St. Tammany Par. Hosp.*, 423 Fed. Appx. 467 (5th Cir. 2011) ..............17

*Preston v. Victoria Indep. Sch. Dist.*, No. CIV.A. V-09-20, 2010 WL 2735729 (S.D. Tex. July 12, 2010)..................................................................15

*Roberson v. Iberia Comprehensive Cmty. Health Ctr., Inc.*, No. 6:19-CV-00067, 2020 WL 1930467 (W.D. La. Apr. 21, 2020) ....................................18

*Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755 (5th Cir. 1996) ......................9

*Salem v. Houston Methodist Hosp.*, No. CIV.A. 4:14-1802, 2015 WL 6618471 (S.D. Tex. Oct. 30, 2015).................................................................17

*State Farm Life Ins. Co. v. Gutterman,* 896 F.2d 116 (5th Cir. 1990) ....................2

*Taylor v. Principal Fin. Group, Inc.*, 93 F.3d 155 (5th Cir. 1996) .......................16

*Thomas v. Barton Lodge II, Ltd.,* 174 F.3d 636 (5th Cir. 1999)...............................2

*Ulrich v. Exxon Co.*, 824 F. Supp. 677 (S.D. Tex. 1993).........................................2

*Wallace v. Wormuth*, No. 18-CV-6525 (RA), 2022 WL 993064 (S.D.N.Y. Mar. 31, 2022) ............................................................................................10

*Weigel v. Target Stores*, 122 F.3d 461 (7th Cir. 1997)) .........................................10

**Statutes**

42 U.S.C. § 12111(8) ................................................................................8

## SUMMARY OF THE ARGUMENT

Plaintiff's disability discrimination and FMLA interference and retaliation claims fail because Harris County, Texas ("the County") granted all of Plaintiff's leave requests, provided the accommodation he requested, which was leave, and took no adverse employment action against him.

Plaintiff requested FMLA leave twice in 2022, and both times the County granted it. Plaintiff also requested and received ADA paperwork from the County, and the only accommodation he requested was leave in March 2022, which was granted. Plaintiff's doctors never identified an accommodation other than leave that would allow Plaintiff to perform his job. Therefore, Plaintiff's failure-to-accommodate claim fails as a matter of law.

Plaintiff's claims also fail because the County did not take any adverse employment actions against him. Neither his negative performance evaluation nor his resignation qualifies as adverse employment actions, as a matter of law.

Additionally, the County had a legitimate business reason for giving Plaintiff a low rating on his performance evaluation that covered 2021: that year, Plaintiff, an assistant county attorney for Harris County, Texas, struggled extensively with his work performance. He missed deadlines, forgot to file or respond to motions, and exercised poor judgment. At the time, Plaintiff responded to his evaluation by saying that he was not surprised and that he had been unhappy with his performance.

Finally, Plaintiff's voluntary resignation in July 2022 does not qualify as an adverse employment action, because he fails to meet the high burden of establishing constructive discharge.

Therefore, all of Plaintiff's claims should be dismissed with prejudice.

## I.   STANDARD OF REVIEW

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *see* Fed. R. Civ. P. 56(a). A dispute about a material fact is "genuine" if the evidence would allow a reasonable jury to find in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

If the movant meets its burden and points out an absence of evidence on an essential element of the non-movant's case, on which the non-movant bears the burden of proof at trial, the non-movant must then present competent summary judgment evidence to support the essential elements of his claim and demonstrate that there is a genuine issue of material fact for trial. *National Ass'n of Gov't Employees v. City Pub. Serv. Board,* 40 F.3d 698, 712 (5th Cir. 1994). The non-movant may not rely merely on allegations, denials in a pleading, or unsubstantiated assertions that a fact issue exists, but he must offer specific facts showing the existence of a genuine issue of material fact concerning every element of his causes of action. *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998); *see Brandon v. Sage Corp.*, 808 F.3d 266, 270 (5th Cir. 2015) (requiring more

than "metaphysical doubts as to the material facts").

Conclusory allegations unsupported by evidence cannot overcome summary judgment. *National Ass'n of Gov't Employees,* 40 F.3d at 713; *Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir. 1996). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Liberty Lobby,* 477 U.S. at 247–48 (emphasis in original); *see State Farm Life Ins. Co. v. Gutterman,* 896 F.2d 116, 118 (5th Cir. 1990). "Nor is the 'mere scintilla of evidence' sufficient; 'there must be evidence on which the jury could reasonably find for the plaintiff.'" *Liberty Lobby*, 477 U.S. at 252. The Fifth Circuit requires the non-movant to submit "significant probative evidence." *Gutterman,* 896 F.2d at 118. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Thomas v. Barton Lodge II, Ltd.,* 174 F.3d 636, 644 (5th Cir. 1999) (citing *Liberty Lobby,* 477 U.S. at 249–50). Where intent and motive are at issue and the plaintiff's only evidence is conclusory allegations and unsupported speculation, summary judgment is appropriate. *Lawrence v. University of Tex. Med. Branch*, 163 F.3d 309, 313 (5th Cir. 1999); *Ulrich v. Exxon Co.*, 824 F. Supp. 677, 686 (S.D. Tex. 1993).

## II.   STATEMENT OF FACTS

Harris County, Texas ("the County") hired Plaintiff to an Assistant County Attorney position on April 15, 2013. (Ex. 1, Pl. Dep. 80:4-6; 110:19-22.) His

essential job duties included writing and arguing legal documents, investigating and responding to discovery requests, and preparing for and attending hearings and trials. (Ex. 2; Ex. 7, 718-26) As an attorney, he was required to complete those essential job duties within the required deadlines. (Ex. 3, Hopkins Dep. 91-92, 98; Ex. 2.)

## A. Plaintiff's work performance suffers in 2020.

In 2020, Plaintiff received a written counseling for "very poor judgment" in managing a case. (Ex. 4, 2849-2850.) In 2021, Plaintiff's work performance declined further. Starting in April 2021, his managers had conversations with him regarding the pattern of missed deadlines. (Ex. 11, 1390-91.) Yet he continued to miss deadlines in his cases. (Ex. 5, 837-38 (missed hearing date), 878-79 (58 days late).)

In April 2021, Plaintiff informed his supervisors, Stan Clark and Seth Hopkins, that he was "struggling with work", had anxiety and depression related to his divorce, and that his work was "getting slower." (Ex. 1, Pl. Dep. 16:6-17:20.) Plaintiff testified that Clark and Hopkins were supportive. (Ex. 1, Pl. Dep. 17:21-18:24.) Plaintiff asked about their experience as attorneys handling their work, but did not ask for a reasonable accommodation. (Ex. 1, Pl. Dep. 19:1-20:9; 21:13-22:22.)

Plaintiff did not bring up his anxiety and depression again to his supervisors until November 2021. (Ex. 1, Pl. Dep. 16:6-18.) After Hopkins informed Plaintiff that his missed deadlines were a serious matter, Plaintiff stated that he was struggling

with work due to stressful personal matters. (Ex. 1, Pl. Dep. 23:4-27:17.) Again, he did not request any specific accommodation. (Ex. 1, Pl. Dep. 23:4-27:17; Ex. 15, Clark Dep. 103:3-104:25; Ex. 3, Hopkins Dep. 40:21-44:4.)

### B. Plaintiff reaches out to Human Resources at his supervisor's advice.

On December 10, 2021, Plaintiff emailed the County's HR Generalist, Jamie Buchanan, to "start the process of ADA or FMLA accommodation" due to personal stress, which he admitted was impairing his ability to timely complete his tasks. (Ex. 6, 219-21.) He stated that Hopkins had advised him to reach out to start the process. (Ex. 6, 220.) Buchanan responded by sending him FMLA paperwork and asking him what accommodation he was seeking. (Ex. 6, 219.) Plaintiff stated that he was not sure what accommodation he was seeking, but would reach out to his managers and medical provider. (Ex. 6, 219.)

Buchanan sent Plaintiff ADA paperwork on December 30, 2021. (Ex. 6, 222.) On January 24, 2022, Plaintiff's accommodation request was denied due to failure to return the paperwork, with Buchanan noting that the County would be happy to reconsider if he provided the completed paperwork. (Ex. 6, 223-25.)

Plaintiff never submitted medical paperwork requesting an accommodation that would allow him to perform his job. (Ex. 1, Pl. Dep. 172:10-173:9, 229:4-19; Ex. 7, 742-45; Ex. 18, Buchanan Dep. 81:6-22.) After Plaintiff explained his job duties to his psychiatrist, his psychiatrist stated that he could not think of a

reasonable accommodation other than leave. (Ex. 1, Pl. Dep. 172:10-173:9 and Ex. 7, 744-745.)

### C. Plaintiff takes FMLA leave.

On February 24, 2022, Plaintiff's doctor stated that Plaintiff needed a leave of absence due to his increased stress level. (Ex. 7, 739.) The County approved Plaintiff's request for leave from February 28, 2022 through March 12, 2022. (Ex. 8, 12, 15.) Afterwards, Plaintiff went on military leave through March 27, 2022. (Ex. 10, 217; Ex. 1, Pl. Dep. 51:14-16.)

The same month that Plaintiff went out on leave, his supervisor Seth Hopkins was transferred to a different division and Natalie DeLuca took on his role. (Ex. 3, Hopkins Dep. 35:14-19.)

### D. Plaintiff's supervisors work with him to improve his performance.

Plaintiff's supervisor reassigned his tort cases, reducing his caseload in an attempt to relieve Plaintiff's work-related stress. (Ex. 15, Clark Dep. 161:3-22, 170:5-25, 171:1-6) Plaintiff had previously told his supervisor that his tort cases were "being neglected" because he didn't "have time to focus on those." (Ex. 1, Pl. Dep. 159:19-23.) Plaintiff also met with his supervisors to discuss how he could work on managing his deadlines. (Ex. 1, Pl. Dep. 174:5-175:25.) Based on his supervisors' feedback, Plaintiff implemented a new calendaring system. (Ex. 1, Pl. Dep. 175:6-14.)

### E. Plaintiff receives a performance evaluation with feedback regarding his poor work performance.

On April 27, 2022,[1] Plaintiff received a performance evaluation with critical feedback, covering the time period of 2021-2022. (Ex. 10.) Both Stan Clark and Seth Hopkins prepared the performance evaluation. (Ex. 2, Hopkins Dep. 55:1-59:21.) Similar to Plaintiff's 2020 counseling that admonished his poor judgment, the evaluation stated that Plaintiff inconsistently used good judgment. (Ex. 10, 208.) The evaluation noted that Plaintiff had success with his administrative cases, but expressed concern with his overall work product, including missed deadlines in cases. (Ex. 10, 209.) Specific examples were provided, such as failing to timely file or respond to motions. (Ex. 10, 209.) Missed deadlines in litigation were considered critical errors at the County. (Ex. 3, Hopkins Dep. 92:11-20; 98:10-23; Ex. 2.) His managers recommended that Plaintiff be placed on a performance improvement plan. (Ex. 10, 210.)

On May 6, 2022, Plaintiff responded to the evaluation by stating that problems with his personal life had interfered with his work. (Ex. 10, 211.) He admitted that the negative performance review "did not come as a surprise to [him]" and that he had "also been unhappy with [his] performance." (Ex. 10, 217.)

That same day, Natalie DeLuca responded, saying that she and Stan would

---

[1] Although the performance evaluation was provided after Natalie DeLuca took over Seth Hopkins' role, it was prepared in December 2021 and January 2022, by Stan Clark and Seth Hopkins. HC 881, 1309, 1320; Clark Dep. 146:3-5.

"work closely with [Plaintiff] on a weekly basis", and explaining that the performance improvement plan process would not start until after an upcoming legal conference. (Ex. 11, 871-72.) Because Plaintiff took FMLA leave shortly after the conference, and then resigned, Plaintiff was never placed on the performance improvement plan. (Ex. 1, Pl. Dep. 84:20-85:1; Ex. 12, DeLuca Dep. 97:14-98:23, 102:14-24.)

After the performance review, Plaintiff confirmed that he still did not know what accommodation he was seeking. (Ex. 1, Pl. Dep. 114:2-12.)

### F. Plaintiff files an EEOC Charge and takes additional FMLA leave.

On May 16, 2022, Plaintiff filed an EEOC Charge alleging disability discrimination and retaliation. (Ex. 13.)  Shortly after filing his charge, Plaintiff request a second leave from May 23, 2022 through July 8, 2022, which was approved. (Ex. 8, 19-20, 1912-15.)  On June 7, 2022, Plaintiff was also approved for intermittent FMLA leave. (Ex. 8, 29-30.)  Although Plaintiff admits that his supervisors did not say anything negative about his leave, his "perception" was that they were unsupportive. (Ex. 1, Pl. Dep. 122:10-124:11.)

### G. Plaintiff voluntarily resigns.

On July 11, 2022, Plaintiff returned to work. (Ex. 9, 1914.)  On July 18, 2022, Plaintiff resigned. (Ex. 14, 32.) After resigning, he submitted an exit survey which provided both positive and negative feedback but did not allege unlawful

discrimination or retaliation. (Ex. 1, Pl. Dep. 195:8-196:2; Ex. 14, 204-07.) He stated that he was grateful to the County and would recommend working there. (Ex. 1, Pl. Dep. 205:20-206:2; Ex. 14, 207.)

## III.   ARGUMENTS & AUTHORITIES

### A. Plaintiff's disability discrimination claim fails.

To make a prima facie case of disability discrimination under the ADA, Plaintiff must establish that (1) he has a disability or was regarded as disabled, (2) he was qualified for the job, and (3) he was subject to an adverse employment decision on account of his disability. *Jennings v. Towers Watson*, 11 F.4th 335, 344 (5th Cir. 2021). Plaintiff cannot prove the second or third elements.

#### 1. Plaintiff cannot establish the second element of his prima facie disability discrimination claim, because there was no accommodation that allowed him to perform the essential functions of his position.

The ADA defines a "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); *Equal Employment Opportunity Comm'n v. Modern Group, Ltd.*, No. 1:21-CV-451, 2024 WL 1288634, at *20 (E.D. Tex. Mar. 25, 2024).

"While the ADA focuses on eradicating barriers, the ADA does not relieve a disabled employee or applicant from the obligation to perform the essential functions of the job." *Foreman v. Babcock & Wilcox Co.,* 117 F.3d at 808 (5th Cir. 1997) (citing 29 C.F.R. § 1630, App. Background); *see also Burch v. City of Nacogdoches*,

174 F.3d 615, 621 (5th Cir. 1999).

Therefore, to be considered a qualified individual, the plaintiff must show that: (1) he can perform the essential functions of the job despite his disability; or (2) if he is unable to perform the essential functions of the job, that a reasonable accommodation by the employer would enable him to perform those functions. *Equal Employment Opportunity Comm'n v. Modern Group, Ltd.*, No. 1:21-CV-451, 2024 WL 1288634, at *20 (E.D. Tex. Mar. 25, 2024). Plaintiff can prove neither.

### a. Plaintiff could not perform an essential function of his job: meeting deadlines.

Plaintiff was a lawyer who had a pattern of failing to meet deadlines. (Ex. 2; Ex. 10, 208-10.) He requested an accommodation due to "personal stress" which he stated was "really impairing my ability to get my tasks done in a timely manner." (Ex. 6, 220.) However, meeting deadlines was an essential function of his job as an attorney. (Ex. 2.)

Courts have recognized that "[a]n essential element of any ... job is an ability to ... complete assigned tasks within a reasonable period of time." *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 759 (5th Cir. 1996). In one case, an attorney's failure-to-accommodate claim failed where her remote-work accommodation request led to missed deadlines. *See Credeur v. Louisiana Through Office of Attorney Gen.*, 860 F.3d 785, 795 (5th Cir. 2017) (explaining that "many of Credeur's cases had pressing deadlines and required immediate attention that Credeur was

unable to give").

In another failure-to-accommodate case, the attorney's doctor stated that "[s]tressors such as strict deadlines should be avoided as much as possible." *Wallace v. Wormuth*, No. 18-CV-6525 (RA), 2022 WL 993064, at *9 (S.D.N.Y. Mar. 31, 2022). However, "meeting deadlines (including deadlines other than those imposed by courts or other adjudicators)" was an essential function of her job as an attorney. *Id.* at *13. The court noted that "internal deadlines or client-driven deadlines" were also an essential function of her position. *Id.* at *13 n. 9. The attorney's employer could not accommodate her request not to be assigned strict deadlines without removing essential functions of her position, and thus the court granted summary judgment for her employer. *Id.* at *14.

### b. No reasonable accommodation would enable Plaintiff to meet his essential job function of meeting deadlines.

Plaintiff never identified a reasonable accommodation that would allow him to perform the essential job function of meeting his deadlines. In fact, Plaintiff testified that his doctor could not think of a reasonable accommodation other than leave. (Ex. 1, Pl. Dep. 172:10-173:9 and Ex. 7, 744-45.) "[W]here a plaintiff's 'own doctor,' not the defendant, 'has concluded she could not perform her job ... [that plaintiff] cannot establish that she is a "qualified individual with a disability" under the ADA.'" *Dietelbach v. Ohio Edison Co.*, 1 F. App'x 435, 437 (6th Cir. 2001) (quoting *Weigel v. Target Stores*, 122 F.3d 461, 467 (7th Cir. 1997)).

Because Plaintiff has failed to establish a reasonable accommodation that would allow him to perform his essential job functions, he cannot establish the second element of his prima facie disability discrimination claim.

### 2. Plaintiff cannot establish the third element of his prima facie disability discrimination claim, because there was no adverse employment decision.

Plaintiff cannot prove the third element, because Harris County never subjected him to an adverse employment decision. Negative comments on a performance review do not qualify as an adverse employment decision. Nor does Plaintiff's resignation qualify as an adverse employment decision.

#### a. Plaintiff's performance review does not qualify as an adverse employment decision.

Plaintiff's complaint alleges that the adverse actions he endured were a negative annual review and a performance plan. First, Plaintiff was never placed on a performance plan. (Ex. 1, Pl. Dep. 84:20-85:1; Ex. 12, DeLuca Dep. 97:14-98:23, 102:14-24.)

Second, as a matter of law, those actions are not actionable adverse employment decisions. The "Fifth Circuit has confirmed that written reprimands, placement on a performance improvement plan ("PIP"), and other corrective or remedial measures do not constitute adverse employment actions unless they affect job title, grade, hours, salary, or benefits or cause a diminution in prestige or change in standing among coworkers." *Fleming v. Methodist Healthcare Sys. of San*

*Antonio, Ltd.*, *L.L.P.,* No. SA-21-CV-01234-XR, 2024 WL 1055120, at *13 (W.D. Tex. Mar. 11, 2024) (citing *Lemonia v. Westlake Mgmt. Servs., Inc.*, No. 22-30630, 2023 WL 6878915, at *7 (5th Cir. Oct. 18, 2023). "And rightly so—immunity from criticism cannot, logically or legally, be a term, condition, or privilege of employment." *Id.* at *7, 14 (holding that employee could not establish a prima facie case of employment discrimination based on her corrective action and paid suspension).

"Indeed if every unfavorable performance review or reprimand constituted a material adverse employment action under Title VII, courts and administrative bodies would become unfettered arbiters of Title VII's remedial mechanisms." *Moore v. Excel Contractors, LLC*, No. CV 21-698-JWD-RLB, 2024 WL 2819235, at *16 (M.D. La. June 3, 2024) (holding that because the employee did not allege any consequences flowing from his write ups or the false accusations against him, neither action could rise to the level of an actionable adverse employment action). Accordingly, one district court stated that it "refuses to act as the [defendant's] super-personnel department and it will not scrutinize the specifics of standard performance reviews*." Dixon v. Garland*, No. 4:23-CV-00019-P, 2024 WL 150509, at *5 (N.D. Tex. Jan. 12, 2024).

Even if Plaintiff's low performance rating was an adverse action (which it was not), the County had a legitimate, nondiscriminatory reason to give Plaintiff a low

performance evaluation: his performance failed to meet expectations, as Plaintiff himself admitted. (Ex. 1, Pl. Dep. 16:6-17:20, 55:8-12; Ex. 2.) Plaintiff admitted that the negative performance review "did not come as a surprise to [him]" and that he had "also been unhappy with [his] performance." (Ex. 10, 217.)

Finally, there is no causal connection between Plaintiff's protected activity and his negative performance evaluation, which was based on his poor performance that occurred prior to his leave requests.

### b. Plaintiff's resignation does not qualify as an adverse employment decision.

To the extent that Plaintiff alleges he was constructively discharged, his allegations regarding his employment conditions do not show that the alleged conditions were so intolerable that a reasonable employee in his situation would have felt compelled to resign *See Johnson v. PRIDE Indus., Inc.*, 7 F.4th 392, 407 (5th Cir. 2021) (upholding dismissal of constructive discharge claim where employee claimed that employer's alleged failure to address his complaints of harassment, and the effect that failure had on his diagnosed mental disabilities, constituted constructive discharge, because employee failed to address the relevant factors of constructive discharge); *Jeffrey Brown, Plaintiff, v. Valvoline, LLC, & Frank Harris, Defendants.*, No. 4:22-CV-04059, 2024 WL 2946099, at *8 (S.D. Tex. June 11, 2024) (granting summary judgment to employer on constructive discharge claim where employee was often on leaves of absence and thus had little interaction with

supervisors, and failed to identify any discrete events that made him feel compelled to resign); *Bye v. MGM Resorts Int'l, Inc.*, 49 F.4th 918, 925 (5th Cir. 2022), cert. dismissed, 143 S. Ct. 1102, 215 L. Ed. 2d 669 (2023) (upholding dismissal of constructive discharge claim because employee's allegations of badgering, harassment, or humiliation by other employees, and discomfort due to missed or late lactation breaks, were insufficient to prove that conditions were intolerable).

Although Plaintiff disagreed with the constructive criticism in his performance review, mere criticism does not rise to the level of acts constituting such an untenable work environment as to result in a finding of constructive discharge. *See Guerra v. Houston Indep. Sch. Dist.*, CIV.A. H-04-0600, 2005 WL 1155140, at *5 (S.D. Tex. Apr. 27, 2005) (holding that constructive criticism that included the warning that failure to follow a directive can result in termination of employment did not amount to constructive discharge); *Molina v. Equistar Chemicals, L.P.*, CIV.A. C-05-327, 2006 WL 1851834, at *7 (S.D. Tex. June 30, 2006) (holding that not being promoted, being asked to perform duties that fell within job description, and being told to sign a "last chance memorandum" and increase performance standards did not amount to constructive discharge).

Therefore, Plaintiff cannot establish constructive discharge, and his disability discrimination claim should be dismissed with prejudice.

**B. Plaintiff's failure-to-accommodate claim fails.**

To prevail on his failure-to-accommodate claim, Plaintiff must prove: (1) he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the County; and (3) the County failed to make reasonable accommodations for such known limitations." *Amedee v. Shell Chem., L.P.*, 953 F.3d 831, 837 (5th Cir. 2020).

### 3. Plaintiff cannot establish the first element of his prima facie failure-to-accommodate claim, because there was no accommodation that allowed him to perform the essential functions of his position.

As discussed above in section IV(A)(1), Plaintiff was not a qualified individual with a disability because he cannot show that he can perform the essential functions of the job despite his disability, nor that a reasonable accommodation would enable him to perform those functions.

### 4. Plaintiff cannot establish the third element of his prima facie failure-to-accommodate claim, because the County granted all Plaintiff's requests for leave.

Each time Plaintiff requested leave, the County granted it. (Ex. 8.) Plaintiff never requested an accommodation other than leave. Therefore, Plaintiff cannot establish that the County failed to make reasonable accommodations. *See Preston v. Victoria Indep. Sch. Dist.*, No. CIV.A. V-09-20, 2010 WL 2735729, at *11 (S.D. Tex. July 12, 2010) (holding that granting all an employee's leave requests constitutes reasonable accommodation under the ADA).

Plaintiff complains that the County should have come up with an alternative

accommodation. This argument fails as a matter of law. "Where the disability, resulting limitations, and necessary reasonable accommodations, are not open, obvious, and apparent to the employer, as is often the case when mental disabilities are involved, the initial burden rests primarily upon the employee, or his health-care provider, to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations." *Taylor v. Principal Fin. Group, Inc.*, 93 F.3d 155, 165 (5th Cir. 1996); *see also* Ex. 18, Buchanan Dep. 81:6-22.

Plaintiff failed to meet his burden. He never suggested a reasonable accommodation that would allow him to perform the essential functions of his job. Therefore, Plaintiff's failure-to-accommodate claim must be dismissed with prejudice. *Id.* at 166 (affirming summary judgment for employer on failure-to-accommodate claim where employee sought unspecified accommodation); *Cooper v. Dallas Police Ass'n*, 278 Fed. Appx. 318, 321 (5th Cir. 2008) (affirming summary judgment for employer where employee failed to suggest any accommodations that would enable her to perform her duties).

**C. Even if the County failed to engage in the interactive process – which it did not – there was no ADA violation because the County granted all requested accommodations.**

The County provided Plaintiff with ADA paperwork for his doctor, asked Plaintiff to identify a reasonable accommodation, reassigned some of his cases to reduce his workload, and helped him set up a new calendaring system. (Ex. 6, 219-

221; Ex. 5, Clark Dep. 161:3-22; Ex. 1, Pl. Dep. 174:5-175:25.) The County also granted all of Plaintiff's requests for leave. (Ex. 8.)

Despite this, Plaintiff alleges that the County failed to engage in the interactive process, complaining that his supervisors should have been more creative than Plaintiff himself and his doctors, and devised an accommodation that would allow Plaintiff to perform his job. This is an incorrect view of the law. The Fifth Circuit has explained that **if** an employee satisfies his burden "to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations," only then is the employer is obligated by law to engage in an interactive process. *Picard v. St. Tammany Par. Hosp.*, 423 Fed. Appx. 467, 470 (5th Cir. 2011).

It was Plaintiff's burden to suggest a reasonable accommodation, and he never requested an accommodation that would allow him to perform his job. Plaintiff's own doctor could not think of an accommodation other than leave, and it is undisputed that the County granted all of Plaintiff's leave requests. Because the Plaintiff never suggested a reasonable accommodation (other than leave, which was granted), the County was not further obligated by law to engage in the interactive process. *See Salem v. Houston Methodist Hosp.*, No. CIV.A. 4:14-1802, 2015 WL 6618471, at *8 (S.D. Tex. Oct. 30, 2015) ("failure to participate in an interactive process does not—in and of itself—constitute a violation of the ADA"). Therefore, Plaintiff's disability discrimination claim should be dismissed with prejudice.

**D. Plaintiff's FMLA interference claim fails on the basis that his leave requests were fully granted.**

To prove an FMLA interference claim, Plaintiff must show that his employer interfered with, restrained, or denied him the benefits to which he was entitled under the FMLA, and he suffered prejudice. *Lanier v. Univ. of Tex. Sw. Med. Ctr.*, 527 Fed. Appx. 312, 316 (5th Cir. 2013). Plaintiff cannot show this, because all of his FMLA leave requests were granted. He has no evidence that his FMLA leave was interfered with, restrained, or denied. He also has no evidence that he lost compensation, benefits, or employment status, as required to establish prejudice. *Roberson v. Iberia Comprehensive Cmty. Health Ctr., Inc.*, No. 6:19-CV-00067, 2020 WL 1930467, at *13 (W.D. La. Apr. 21, 2020).

**E. Plaintiff's FMLA interference and retaliation claims fail because his performance evaluation does not qualify as an adverse employment action.**

To the extent that Plaintiff asserts it was interference or retaliation to receive a performance evaluation critiquing his 2021 job performance because he took FMLA leave in 2022, this argument fails. As discussed in detail in Section IV(A) above, a critical performance evaluation is not an adverse employment action.

Additionally, the County's ability to address Plaintiff's performance issues was not limited because Plaintiff requested medical leave. *See Roberson v. Iberia Comprehensive Cmty. Health Ctr., Inc.*, No. 6:19-CV-00067, 2020 WL 1930467, at *14 (W.D. La. Apr. 21, 2020) ("To limit an employer's ability to terminate an

employee for performance issues simply because the employee requested medical leave would vest the employee with greater rights and benefits than she would have enjoyed had she continued working without requesting such leave.").

Even if the performance evaluation did qualify as an adverse employment action (which it does not), the County had a legitimate, nondiscriminatory reason to give Plaintiff a low performance evaluation, as discussed in section IV(A).

## F. Plaintiff's FMLA interference and retaliation claims fail because his resignation does not qualify as an adverse employment action.

To prove FMLA retaliation, Plaintiff must demonstrate: "1) he was protected under the FMLA; 2) he suffered an adverse employment action; and 3) he was treated less favorably than an employee who had not requested leave under the FMLA or the adverse decision was made because he sought protection under the FMLA." *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 790 (5th Cir. 2017). He cannot prove the second or third elements.

Plaintiff resigned voluntarily. As discussed in section IV(A), his resignation does not qualify as a constructive discharge. In one case, an employee alleged she was forced to resign after taking FMLA leave, when "her manager told her that he was "tired of [her] crap, referenced her use of short-term disability insurance, and ordered her to tell him what she plan[ned] to do" about her job." *Cary v. Sandoz, Inc.*, No. 3:23-CV-00080-K, 2023 WL 8461638, at *3 (N.D. Tex. Dec. 6, 2023). This was insufficient to "transform [the employee's] voluntary resignation into a

forced discharge actionable under the FMLA." *Id.* (dismissing FMLA retaliation and interference claims). Likewise, Plaintiff's allegations regarding his work environment are insufficient to transform his resignation into an adverse employment action. Therefore, his FMLA retaliation and interference claims should be dismissed with prejudice.

## **CONCLUSION**

For the foregoing reasons, Defendant Harris County, Texas respectfully requests the Court grant its Motion for Summary Judgment, dismiss all of Plaintiff's claims with prejudice, and award Defendant all other relief to which it is entitled in law or equity.

Respectfully Submitted,
**MONTY & RAMIREZ LLP**

*/s/ Ruth M. Willars*

RUTH M. WILLARS
Texas SBN: 24003175
Fed. ID No.: 28285
Email: rwillars@montyramirezlaw.com
DANIEL N. RAMIREZ
Texas SBN: 24039127
Fed. ID No.: 36213
Email: dramirez@montyramirezlaw.com
Monty & Ramirez LLP
150 W. Parker Road, Third Floor
Houston, Texas 77076
Phone: 281-493-5529
Facsimile: 281-493-5983
**ATTORNEYS FOR DEFENDANT**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that on August 30, 2024, a true and correct copy of the foregoing document was served upon all parties as set forth below pursuant to the Federal Rules of Civil Procedure.

Allison Gabbert
The Gabbert Law Firm
11511 Katy Freeway, Suite 610
Houston, TX 77079
Email: allison@gabbertlawfirm.com
**ATTORNEY FOR PLAINTIFF**

*/s/ Ruth M. Willars*
RUTH M. WILLARS