IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **Patrick Nagorski,** § | | |
| *Plaintiff,* § | | |
| § | | |
| v. § | | C.A. No. 4:23-CV-2860 |
| § | | |
| **Harris County, Texas,** § | | |
| *Defendant.* § | | |

### DEFENDANT HARRIS COUNTY, TEXAS' REPLY SUPPORTING ITS MOTION FOR SUMMARY JUDGMENT

Defendant Harris County, Texas ("the County") files its Reply supporting its motion for summary judgment on Plaintiff's disability discrimination and failure-to-accommodate claims.[1]

**I.   Plaintiff's disability discrimination claim fails because he is not a "qualified individual" under the ADA.**

Plaintiff is not a "qualified individual" under the ADA because he could not, with or without reasonable accommodation, perform the essential functions of his employment position. 42 U.S.C. § 12111(8); *Equal Employment Opportunity Comm'n v. Modern Group, Ltd.*, No. 1:21-CV-451, 2024 WL 1288634, at *20 (E.D. Tex. Mar. 25, 2024).

Plaintiff does not deny that meeting deadlines was an essential function of his

---

[1] After the County moved for summary judgment, Plaintiff nonsuited his claims arising under the FMLA. The County moves to dismiss all his remaining claims with prejudice.

job. Instead, Plaintiff attempts to proffer evidence that he sufficiently met deadlines. The evidence that Plaintiff cites belies his argument. For example, Plaintiff cites to an email thread where he emails his supervisor with a status update, stating, "I am behind on this."[2] Plaintiff's evidence is insufficient to establish that Plaintiff fulfilled the essential function of regularly meeting his deadlines.

There is ample evidence of Plaintiff contemporaneously admitting that he was not regularly meeting his deadlines. Starting in April 2021, his managers had conversations with him regarding the pattern of missed deadlines.[3] On December 10, 2021, Plaintiff admitted that his "ability to get my tasks done in a timely manner" was impaired.[4] In May 2022, Plaintiff conceded, "I knew I needed help completing my deadlines."[5] Plaintiff regularly missed deadlines in his cases.[6]

Plaintiff has insufficient evidence to create a fact issue regarding whether he regularly missed deadlines, and he does not dispute that meeting deadlines was an essential function of his position. Therefore, Plaintiff cannot establish a prima facie case of disability discrimination, and his claim should be dismissed with prejudice.

   II.   **Plaintiff's disability discrimination claim fails because there was no adverse employment decision.**

Plaintiff complains that alleged negative comments (such as being called

---

[2] Pl.'s Ex. 32.
[3] Def.'s Ex. 11 at 1390-91.
[4] Def.'s Ex. 6 at 220.
[5] Def.'s Ex. 10 at 216.
[6] Def.'s Ex. 5 at 837-38 (missed hearing date), 878-79 (58 days late).

"Poor Patrick" or "lazy") were adverse employment decisions, without citing any legal authority to support that notion. Notwithstanding, the alleged negative comments ***were not made to Plaintiff***.[7] Plaintiff testified that he did not learn of the alleged negative comments regarding his mental health struggles, his military service, and his laziness until *after* he resigned.[8]

Similarly, Plaintiff makes references to being assigned 40 civil services to support his constructive discharge claim, but fails to mention that at the time he did not complain about the assignment and that the assignment occurred a year before he resigned for another job.[9]

While Plaintiff admits that performance improvement plans and negative performance reviews are generally not adverse employment actions,[10] he seeks an exception because he feels betrayed. Hurt feelings are not enough to convert a voluntary resignation into a constructive discharge. *Cary v. Sandoz, Inc*., No. 3:23-CV-00080-K, 2023 WL 8461638, at *3 (N.D. Tex. Dec. 6, 2023) (listing cases that show humiliating and demeaning exchanges between an employee and manager do not amount to constructive discharge).

There is nothing in the record to show he was subjected to a hostile work

---

[7] Def.'s Ex. 1, 94:16-19, 116:4-25-117:23.
[8] Def.'s Ex. 1, 94:16-19, 116:4-25-117:23.
[9] Def.'s Ex. 10 at 214; Pl.'s Ex. 3, 159:23-25, 160:1-5.
[10] Plaintiff's response states: "While a negative performance review or improvement plan is not necessarily an adverse employment action, when it is based on pretext with the sole goal to force someone to resign, then it should be considered a [sic] adverse employment action."

environment because of his disability that was so severe and pervasive it required he quit. *Weeks v. Nationwide Mut. Ins. Co.*, No. H-21-4138, 2023 WL 4074409 at *8 (S.D. Tex. May 18, 2023) (granting summary judgment on plaintiff's constructive discharge claim where there was no evidence of continuous and pervasive harassment of an extreme nature). The standard for showing constructive discharge is even more onerous than proving a hostile work environment claim. *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001) ("Constructive discharge requires a greater degree of harassment than that required by a hostile environment claim."). Even in cases where the allegations are much more severe than Plaintiff's allegations, courts have declined to find sufficient evidence of constructive discharge. *See, e.g.*, *Burrle v. Plaquemines Par. Gov't*, 553 Fed. Appx. 392, 395 (5th Cir. 2014) (holding that constructive discharge claim failed despite allegations of racial discrimination, including use of the "n" word and manager asking "when is that boy going to retire").

Therefore, Plaintiff cannot establish a prima facie case of disability discrimination, and his claim should be dismissed with prejudice.

### III. Plaintiff's failure-to-accommodate claim fails because no reasonable accommodation would enable Plaintiff to meet his essential job function of meeting deadlines.

Plaintiff's response does not cite any evidence to show that, while he was an employee, Plaintiff identified a reasonable accommodation that would allow him to

perform his essential job functions. In the Fifth Circuit, this is fatal to Plaintiff's failure-to-accommodate claim. *See Taylor v. Principal Fin. Group, Inc.*, 93 F.3d 155, 166 (5th Cir. 1996); (affirming summary judgment for employer on failure-to-accommodate claim where employee sought unspecified accommodation); *Cooper v. Dallas Police Ass'n*, 278 Fed. Appx. 318, 321 (5th Cir. 2008) (affirming summary judgment for employer where employee failed to suggest any accommodations that would enable her to perform her duties).

### IV. Plaintiff's failure-to-accommodate claim fails because the County granted the only accommodation that Plaintiff requested.

Other than requesting leave, Plaintiff never submitted medical paperwork requesting an accommodation that would allow him to perform his job.[11] And, after each medical leave, Plaintiff's doctor released Plaintiff to work "without restrictions or accommodations."[12]

The County was not obligated to further accommodate Plaintiff, or to engage further in the interactive process with him, because he never requested another accommodation. The Fifth Circuit has explained that **if** an employee satisfies his burden "to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations," only then is the employer obligated by law to

---

[11] Def.'s Ex. 1, Pl. Dep. 172:10-173:9, 229:4-19; Def.'s Ex. 7 at 742-45; Def.'s Ex. 18, Buchanan Dep. 81:6-22. Plaintiff mischaracterizes the EEOC position statement submitted by the County. It is an undisputed fact that Plaintiff never submitted ADA documentation that included any ADA accommodation request, other than FMLA leave.
[12] Def.'s Ex. 9 at 1911 and 1915.

engage in an interactive process. *Picard v. St. Tammany Par. Hosp.*, 423 Fed. Appx. 467, 470 (5th Cir. 2011).

Despite the fact that Plaintiff never suggested a specific accommodation, the County did its best to help him. His supervisor encouraged him to reach out to HR to request ADA or FMLA accommodation.[13] After Plaintiff told his supervisor that his tort cases were "being neglected" because he didn't "have time to focus on those," his supervisor reassigned his tort cases, reducing his caseload in an attempt to relieve Plaintiff's work-related stress.[14] Plaintiff stated that he met with his managers regarding his issues keeping up with deadlines, and explained that his manager "wanted me to pick a calendaring system that worked."[15] Based on his supervisors' feedback, Plaintiff implemented a new calendaring system.[16]

The only accommodation that Plaintiff's doctor identified, and which the County relied upon, was a leave of absence:

---

[13] Def.'s Ex. 6, 219-21.
[14] Def.'s Ex. 1, Pl. Dep. 159:19-23; Def.'s Ex. 15, Clark Dep. 161:3-22, 170:5-25, 171:1-6.
[15] Def.'s Ex. 10, at 217.
[16] Def.'s Ex. 1, Pl. Dep. 175:6-14.

> 10. Is there another accommodation(s) other than of a leave of absence that will enable the employee to perform the impacted job functions? ____ Yes ✓ No
> If so, please describe: N/A
>
>   a. How will the accommodation(s) assist the employee in performing the impacted job functions? N/A
>
>   b. Duration. For how long do you anticipate the employee will need the identified accommodation(s) to perform the job functions?
>
>   > Note: You must provide your best medical judgment, based on current information, as to the length of time the employee will need an accommodation to perform his/her essential job functions.
>
>   (check one) ___ days ___ weeks ___ months ___ years or ___ permanent
>
>   Comments: N/A
>
> 11. **Additional Information.** Are you aware of any other information that should be considered in assessing whether the employee can perform the job functions with or without accommodation? ✓ Yes ___ No If yes, please describe:
> Based on several evaluations, the patient is advised to take a leave of absence to improve mental health. [17]

Dr. Zdilar's declaration asserting that he was not aware of Plaintiff's ADA accommodation request is irrelevant. The record is clear that Plaintiff provided Dr. Zdilar with a medical release authorizing the disclosure of information required for ADA and FMLA Certification:

> **Reason for request of medical records (please check all that apply):**
> Continuation of care [ ]   Legal [ ]   Moving [ ]   Change of Insurance [ ]
> Disability/FMLA Determination [✗]   Personal [ ]   Surgical Eval [ ]
> Other (please comment below) [ ]
> Comments: Please only give what is required for ADA & FMLA Certification. [18]

The Medical Certification provided the definition for a physical or mental impairment under the ADA and provided examples of various forms of accommodation.[19]

---

[17] Pl.'s Ex. 34, HC 00745.
[18] Pl.'s Ex. 34, HC 00738.
[19] Pl.'s Ex. 34, HC 00743, 744.

If Dr. Zdilar lacked information about Plaintiff's job duties after his discussions with his own patient and after reviewing the job description which he was provided,[20] Dr. Zdilar could have stated as much on the medical certification. He did not. Similarly, if Plaintiff thought his doctor was not accurately responding to the certification or not equipped to respond, he could have selected another health care provider; he did not. Instead, Plaintiff submitted Dr. Zdilar's notes returning him to work without restrictions or accommodations after each medical leave.

Plaintiff's own doctor could not think of an accommodation other than leave, and it is undisputed that the County granted all of Plaintiff's leave requests. Because the Plaintiff never suggested a reasonable accommodation (other than leave, which was granted), the County was not further obligated by law to engage in the interactive process. *See Salem v. Houston Methodist Hosp.*, No. CIV.A. 4:14-1802, 2015 WL 6618471, at *8 (S.D. Tex. Oct. 30, 2015) ("failure to participate in an interactive process does not—in and of itself—constitute a violation of the ADA"). The evidence demonstrates that Plaintiff's only requested accommodation was leave, which was fully granted. Therefore, Plaintiff's disability discrimination claim should be dismissed with prejudice.

---

[20] The County provided Plaintiff with his job description to share with his doctor. See Ex. 7 to Def.'s Mot., at 717-31.

**V. Even if Plaintiff could establish a prima facie case (which he cannot), the County had legitimate, nondiscriminatory reasons for its actions, and Plaintiff does not meet his burden to establish pretext.**

Even if Plaintiff's critical performance review was an adverse action (which it was not), the County had a legitimate, nondiscriminatory reason to give Plaintiff a low performance evaluation and contemplate placing him on a performance improvement plan (PIP): his performance failed to meet expectations, as Plaintiff himself admitted.[21]

To survive summary judgment once the County provides a legitimate nondiscriminatory reason, Plaintiff must "offer sufficient evidence to create a genuine issue of material fact ... that [the County's] reason is not true, but is instead a pretext for discrimination." *Kitchen v. BASF*, 343 F. Supp. 3d 681, 690 (S.D. Tex. 2018), report and recommendation adopted, No. 3:17-CV-00040, 2018 WL 5723147 (S.D. Tex. Nov. 1, 2018), aff'd, 952 F.3d 247 (5th Cir. 2020).

Plaintiff claims that his negative performance review was evidence of pretext. This argument fails because Plaintiff admitted that he had performance problems, and that the negative performance review "did not come as a surprise to [him]" and that he had "also been unhappy with [his] performance."[22] The performance assessment began in December 2021 and the need for a PIP was also identified

---

[21] Def.'s Ex. 1, Pl. Dep. 16:6-17:20, 55:8-12; Def.'s Ex. 2.
[22] Def.'s Ex. 10 at 211, 217.

then.[23] Plaintiff was given the performance review and notified about the PIP at the same time as others.[24] Plaintiff attempts to create a fact issue by speaking from both sides of his mouth – on the one hand arguing the PIP was a prelude to terminating him and on the other hand arguing that not providing the PIP was discriminatory. Neither argument works. The evidence shows that the other employee whose performance merited a PIP received her PIP on May 25, 2022, and continues her employment with the County.[25] Plaintiff's subjective fear of termination does not create a fact issue. *See Davis v. Farmers Ins. Exch.*, 372 Fed. Appx. 517, 519 (5th Cir. 2010) (holding that employee's subjective belief could not create a fact issue, and granting summary judgment for employer). Likewise, Plaintiff not receiving a PIP was not pretext for discrimination. Plaintiff was not given a PIP simply because he went out on leave and when he returned, he resigned.[26]

## **CONCLUSION**

After 70 pages and 72 exhibits, Plaintiff has failed to produce evidence sufficient to create a material fact issue on his claims. His disability discrimination claim fails because he is not a "qualified individual" under the ADA as a matter of

---

[23] Def's Ex. 2, ¶ 6.
[24] Def.'s Ex. 20, ¶¶ 3-4; Def.'s Ex. 10.
[25] Def's Ex. 2, ¶ 6 and Def,;s Ex. 20, ¶¶ 3-4.
[26] Plaintiff was told that his PIP would not be issued until after his supervisors returned from a conference held on May 13, 2022. Def's Ex. 12, 97:14-25; 98:18-21. Plaintiff requested his second FMLA leave on May 19, 2022, and it ran from May 23 through July 8. Def.'s Ex. 8 at 19. Plaintiff returned to work on July 11, 2022, and submitted his resignation a week later. Def's Ex. 14 at 32.

law, and because he suffered no adverse employment action, as a matter of law. His failure-to-accommodate claim fails because his only requested accommodation (leave) was fully granted, and because the County did its best to work with Plaintiff to improve his performance despite Plaintiff's failure to request any other accommodation.

For the foregoing reasons, Defendant Harris County, Texas respectfully requests the Court grant its Motion for Summary Judgment, dismiss all of Plaintiff's claims with prejudice, and award Defendant all other relief to which it is entitled in law or equity.

Respectfully Submitted,
**MONTY & RAMIREZ LLP**

*/s/ Ruth M. Willars*
RUTH M. WILLARS
Texas SBN: 24003175
Fed. ID No.: 28285
Email: rwillars@montyramirezlaw.com
DANIEL N. RAMIREZ
Texas SBN: 24039127
Fed. ID No.: 36213
Email: dramirez@montyramirezlaw.com
Monty & Ramirez LLP
150 W. Parker Road, Third Floor
Houston, Texas 77076
Phone: 281-493-5529
Facsimile: 281-493-5983

**ATTORNEYS FOR DEFENDANT**

## **CERTIFICATE OF SERVICE**

      The undersigned attorney hereby certifies that on September 30, 2024, a true and correct copy of the foregoing document was served upon all parties as set forth below pursuant to the Federal Rules of Civil Procedure.

Allison Gabbert
The Gabbert Law Firm
11511 Katy Freeway, Suite 610
Houston, TX 77079
Email: allison@gabbertlawfirm.com
**ATTORNEY FOR PLAINTIFF**

                                                  */s/ Ruth M. Willars*
                                                  RUTH M. WILLARS